UNITED STATES v. ATCHISON, T. & S. F. RY. CO.

(District Court, S. D. California, S. D. November 24, 1915.)

No. 376.

1. MASTER AND SERVANT ⬤�longrightarrow13—HOURS OF SERVICE ACT.

Under Hours of Service Act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, §§ 8677–8680]), declaring that no common carrier engaged in interstate commerce shall require or permit any employé subject to the act to remain on duty for a longer period than 16 hours and when such employé shall have been continuously on duty for 16 hours he shall be relieved and not required or permitted to again go on duty until he has had at least 10 consecutive hours off duty, provided that the requirement shall not apply in case of casualty or unavoidable accident, or where the delay was the result of a cause not known to the carrier at the time the employé has left the terminal, and it could not have been foreseen, the carrier is forbidden, not only from requiring or permitting employés to remain on duty more than 16 hours, but bound to relieve them after they have been on duty for such time, and to escape the penalty for permitting or requiring employés to remain on duty more than 16 hours must show that such excess service was required by some unforeseen casualty, etc., and could not have been prevented by the

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

exercise of that high degree of care consistent with the purpose of the act in the equipment and operation of its railroad.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

2. MASTER AND SERVANT ☞13—HOURS OF SERVICE ACT—CONSTRUCTION.

Under the Hours of Service Act, a railroad company, where its train is delayed by reason of unforeseen casualty, etc., may continue the train crew in service so as to operate the train to such a point where, having due regard to all the circumstances, the crew might be relieved and allowed to take the rest required, but the carrier cannot permit or require employés to continue to the end of their run, though had it not been for such unforeseen delay, the run would have been completed within the time fixed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

At Law. Action by the United States of America against the Atchison, Topeka & Santa Fé Railway Company. On motion for directed verdict. Verdict directed against defendant.

Albert Schoonover, U. S. Atty., of Los Angeles, Cal., and Roscoe F. Walter, Special Asst. U. S. Atty., of Washington, D. C.

Paul Burks, of Los Angeles, Cal., for defendant.

BEAN, District Judge. [1, 2] The motion for a directed verdict in this case raises the question as to whether the defendant company has accounted by its testimony for the excess service. It is admitted that the crews on these several trains were actually on duty in excess of the time limited by the statute. The burden is therefore upon the defendant to show that that excess service was justified by the exception contained in this act. This act provides that it shall be unlawful for any common carrier, its officer or agent, subject to this act, to require or permit an employé subject to the act to be or remain on duty for a longer period than 16 consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for. 16 hours, he shall be relieved and not required or permitted to again go on duty until he has had at least 10 consecutive hours off duty: Provided, however, that this requirement shall not apply in case of casualty or unavoidable accident or the act of God, nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of the employés at the time the employés left the terminal and which could not have been foreseen.

In support of the motion two points are made: First, that the evidence does not show that the excess service on these three several trains was due to the delays relied upon, the argument being that the testimony shows that the ordinary running time between these terminals was about 12 or 12½ hours, and delays accounted for are 2 hours and some minutes in one instance and an hour and some minutes in the other two, and that that is not sufficient to make up the difference between 12½ hours and the actual time the crew was on duty. On the part of the defendant it is insisted that the testimony is sufficient

to carry the case to the jury, and that the jury ought to be called upon to determine whether from this record it has brought itself within the exception.

Now, so far as the causes of these delays are concerned, and the defendant's responsibility for them, it is unnecessary, as I view this testimony and interpret the statute, for the court to express any opinion as to whether the evidence is sufficient to carry the case to the jury.

The purpose of this statute, as the title plainly imports, is to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés, on the theory, I assume, that experience has shown that by excessive periods of duty the employés become fatigued and careless, or more or less careless, thus causing accidents leading to injuries and destruction of life and property. The statute, therefore, should receive a construction to carry out the purpose intended by Congress.

It will be observed that it not only prohibits a carrier coming within its provisions from requiring or even permitting an employé subject to this act to remain on duty longer than the time specified therein, but it also provides that when the employé shall have been continuously on duty for 16 consecutive hours, he shall be relieved and not required or permitted again to go on duty until he has had the requisite time for rest, except in cases of casualty or unavoidable accident, or the act of God, or a delay which was the result of a cause not known to the carrier or its officer or agent in charge of the employé at the time the employé left the terminal, and which could not have been foreseen. The statute therefore not only imposes upon a carrier what might be denominated a negative obligation, forbidding it from requiring or permitting an employé to remain on duty, but imposes an affirmative duty to relieve such employé after 16 hours of consecutive service, unless it is prevented from doing so by some of the matters specified in the proviso in the statute. Now, the manifest purpose, as I see it, of this statute, was to absolutely prohibit a carrier from requiring or permitting an employé to remain on duty longer than the time specified therein, and to require it to relieve such employé at the expiration of such time unless its delay in doing either of these things comes within the proviso of the statute and was due to one of the causes specified in the exception. In other words, as I understand the statute, the carrier is exempt from liability for excess service when, in case of casualty, unavoidable accident, the act of God, or any other matter specified in the proviso, it necessarily requires or permits an employé to remain on duty beyond the time specified.

Now, therefore, it appears that the train crew has been on duty more than 16 hours consecutively. It is incumbent on the carrier to show by proof that the excess time could not have been prevented by it by the exercise of that high degree of care in the matter of its equipment, the operation of its road, consistent with the purposes to be accomplished by this act and the practical operation of the road. And, as I understand the statute and construe the decision of the Court of Appeals of the Ninth Circuit, and especially in what is referred to as the Salt Lake Case (San Pedro, L. A. & S. L. R. Co. v. U. S.) 220

Fed. 737, 136 C. C. A. 343, the carrier is required to relieve the crew at the expiration of 16 hours, or as soon thereafter as it can do so by the exercise of the degree of care to which I have alluded. I suppose that it could continue the service so far as might be necessary to permit the train to be operated to a point, having due regard to all the circumstances and surrounding facts, where the train crew could be relieved or allowed to take the rest required by the statute; but I do not understand that it may permit or require an employé to continue to the end of his run, although but for some delay due to a matter referred to in the proviso or covered by the proviso in the statute, he would have been able to complete the run within the time specified.

Now, I know this statute is susceptible of different constructions, and that in some instances it has been held that where the delay is due to one of the causes specified in the exception that it in effect suspends the operation of the statute as to that particular run, and that the carrier may permit the employé to continue to the end of his run. But I do not concur in that view of the statute, and I feel constrained to follow what I understand to be the decision of the Court of Appeals of this circuit and to hold that the defendant in this case has not shown a legal excuse for the admitted excess service. The case of the United States against the Northern Pacific Railway Co., 215 Fed. 64, 131 C. C. A. 372, is not in conflict with this view. In that case the delay was caused by a wreck due to an admittedly unavoidable cause, and the company was charged with permitting the train crew to return to work without first having had the requisite number of hours of rest, and the court held as a matter of fact from the testimony in the case that a sufficient excuse was shown for the failure of the dispatcher to check up the service of the different crews, and that the company ought not to be held liable under the circumstances shown by that record for the excess service. But that was a pure question of fact shown by the testimony, and which the court deemed sufficient to bring the case within the exception.

Under these views, the motion for the directed verdict will be allowed.